Good morning, Your Honors. My name is Tracy Bone, and I am here representing the Petitioner California Public Utilities Commission, or the CPUC. With the Court's permission, I would like to reserve one minute for rebuttal. We are here today on behalf of California Utility Ratepayers because the FERC Orders on Review in this case grant an incentive to PG&E for doing something it is already required to do, to remain a member of the California Independent System Operator, also referred to as the CAISO. What do you mean by is required to do? I mean, there's a lot of static here as to whether they can get out or they can't get out. Tell us about that. Yes, Your Honor. You said they have no option to get out. They're stuck. Is that right? Right. They say we have plenty of options to get out. Yes, they do. And as an initial matter, all of those arguments are post-talk. So FERC never really addressed the issue of whether PG&E's membership in the CAISO was voluntary or not. For purposes of the membership incentive, it found that those arguments were irrelevant. And so FERC's later Right, but can they get out or not? No, they cannot get out. The simple fact is that in 1995, the California Public Utilities Commission ordered PG&E and the other utilities to form and join the CAISO. In 1998, we said you cannot leave the CAISO or you cannot transfer your assets away from the CAISO, which is essentially the same thing. That's 1998? That's in 1998. That's a long time ago. Yes, and we have consistently Can it never change its view of that? The CPUC cannot. If PG&E were to come to the PUC and ask under Section 851 to transfer control of its assets away from the CAISO, the CPUC would not be able to grant that request. Why would it not be able to in comparison to it simply wouldn't? It would not be Why is it not able to? Is there some law that says not able to? Yes, Your Honor. What is that? And that is Section 330 of the Public Utilities Code, subsection M, required that the CAISO be formed and that the assets be transferred to the CAISO. And the CPUC interprets that rule to be that unless there is a change in state law, it cannot authorize PG&E to transfer its assets away from the CAISO. So we believe that there would need to be a change in state law. Well, could there be? Yes, there could be a change in state law, but the point And could your client cause that to happen? If you thought it was a good idea? We could make that argument to the legislature Oh, if they came and you thought it's a new day, there's something going on here that we haven't considered, you could say, yeah, this is a great idea, and you could change it. Well, they'd have to persuade the legislators in Sacramento about that. Yes That's your argument. Yes, we would have to persuade the legislators in Sacramento. And so the real question is And if PG&E contested your interpretation of the law, I expect they could file a declaratory judgment action and say, yeah, we'd like to leave. We would like to leave, and therefore we think the agency's interpretation of the law is incorrect. That is all correct. And the fact is that all of these facts point to the fact that it would need to do a huge number of things. Where are we in this case? Are you simply saying that the FERC didn't consider any of these issues as they were required to, and therefore there should be a remand so that they can consider them? Or are you asking for greater relief than that? Your Honor, we would actually seek greater relief than that at this point, given a number of post hoc arguments that FERC has made. We believe that because the courts have found that incentives added to cost-based rates can be no more than are needed for the purpose, that awarding an incentive to encourage RTO membership that is already required by state regulations and affirmed by state law cannot be an incentive to induce behavior. These are windfalls to the utilities, and based on these common-sense principles, we would urge you to reverse FERC by finding that its grant of the membership incentive to PG&E, which is not a volunteering member of the CAISO, results in an unjust and unreasonable rate as a matter of law. Isn't one of the key words here joins? Joins. Joins. Any joins? Why is joins necessarily past tense as compared to what's going on now? They're still involved, so they join in the, you pronounce it CAISO? CAISO. CAISO. Wasn't it joins or what? It's joins or continues its membership in. So for purposes of this case, we are talking about whether PG&E is obligated to continue its membership in the CAISO. It joined the CAISO back in 1997. But that's joined, but it's still participating. It's still participating. Why can't you incentivize that by saying we give you this benefit? Because the continued participation in the CAISO is required by a CPUC order. No, they're not raising the row that we discussed a few minutes ago of declaratory this and going to the legislature that. I mean, they're just quietly doing it. Why can't you incentivize that with some kind of a benefit? Because the Federal Power Act does not allow incentives to be granted that are any more than are necessary to encourage the behavior. Here, PG&E... Isn't this encouraging the behavior? You're in it? We're encouraging your behavior to stay in it? No, because PG&E is already required to be there. We don't need to give them an incentive. It's a windfall to them. We're giving them something for doing nothing because they have to comply with the CPUC's orders. What's their argument and counter that? PG&E's argument is that they don't agree with the CPUC's interpretation of state law. And what's interesting about that is, first of all, they've never challenged the CPUC on this issue. And in fact, we affirmed that same interpretation of the law in a 1999 order when Edison sought declaratory relief, asking that it should only go to the CAISO to get... And we said, no, Edison, you need to come to us because we have a statutory obligation under Section, I believe it's 332 of the California Public Utilities Code to ensure that you have all of the assets that you need to safely and reliably operate the system. So we cannot overlook Section 851 and allow you to do this with only FERC approval. I gather your argument, though, is that all of that's not relevant to this case because FERC assumed that PG&E could not leave and said it's appropriate for us to give the editor, even in cases where everybody concedes that they can't leave, right? I mean, isn't that your argument in this case? That is correct, that FERC is now coming up with a new rule that is not consistent with its 2006 orders. Those orders had essentially created a rebuttable presumption that membership was voluntary and we wanted to show that PG&E's membership was not voluntary and FERC said that showing's irrelevant because basically anybody who is a member of an RTO and asks for the membership incentive can get it. Your Honors, I note that I'm approaching seven minutes and I've given seven and a half minutes to my opposing counsel. Would you like to consider questions or should I? Your opposing counsel? No, you mean your co-counsel. I mean my co-counsel. Yes, you should let him argue. Okay, thank you. Good morning, Your Honors. My name is Harvey Ryder and I'm appearing for the intervenors, the Sacramento Municipal Utility District, the California Department of Water Resources, and the Transmission Agency of Northern California, and I can assure you I'm co-counsel on this case. I'd like to Apparently you oppose each other in some other context occasionally. Yes, that's true. I'd like to focus the Court on one issue, and that is the Commission, the CPUC's argument that the Commission failed to address its contention that PG&E's, that the Commission, FERC that is, its award of millions of dollars a year to PG&E for staying in a regional transmission organization, it's not free to leave without the CPUC say so, violates longstanding Commission policy and the common sense proposition that you can't provide an incentive for doing something you've already done or that you're obligated to do. The Commission never really argues, not in its orders below and certainly not in its orders approved below, can be squared with that policy. On the contrary, until last month, until last month, the Commission's argument has been, well, these policies, what they call old policies, what I think they're saying is outdated policies, were implicitly superseded by Order 679. But I say last month because last month in response to this Court's directive to answer the 28J letter that we and the CPUC filed last November, the Commission essentially has conceded, well, you know what, 630 679 didn't supersede Order or didn't supersede these earlier policies. Roberts. It's apples and oranges. Well, no, that's the point, Your Honor. It's not apples and oranges. What the Court's, what the Commission said in the San Diego case we cited was, and the Commission itself describes this as a general policy rationale. They say at paragraph 22 of that order, Incentives cease to be incentives if the actions they are intended to promote has already occurred. This is a principle, a general principle. And their argument in their 28J letter is, well, yeah, it's a general principle, but it doesn't apply to participation, continued participation in an RTO. Well, that doesn't make any sense. If you look at paragraph 332 of this Order 679 they rely on, there's a paragraph where the Commission was asked, well, we're a bunch of utilities. We think we should get an incentive for participating in regional transmission planning. Very good thing. It promotes the public. And the Commission says, no, you're not going to get an incentive payment for that because we've ordered you to participate in regional planning. It's not voluntary. So that very principle, not only that the earlier principle that predated 679 not only wasn't implicitly superseded in 679, it was expressly endorsed in Order 679. The Commission's orders on review don't grapple with this at all. And what we're left with is an agency that has approved a windfall under a presumption that has become irrebuttable. The premise for the Adder was that participation was voluntary. That's at paragraph 331 of Order 679. That was the entire premise for granting the continued participation Adder. The Commission never gave the CPC or the intervenors the opportunity to rebut that. And I think that calls for a remand. And we would urge this Court to vacate the Commission's orders and remand it back to the Commission. If the Court has no other questions. Remand it for what? Well, remand it. The other side doesn't want to remand. You want to remand for what? Well, if it's — Your other side partner doesn't. No, well, Your Honor, I think even where you reverse, you can remand back to the agency to take the actions, for example, to order the return of the monies. Wait a minute. Are you asking to remand with the directions that they take an action, or are you asking to remand so that they consider the arguments that they said were irrelevant? Your Honor, I think in this case, considering these arguments would be a futile gesture. The Commission submitted another 28J letter in which they took another crack at dealing with the contentions. We know what they would say in response to the argument that participation is not voluntary. They don't dispute the existence of the California law that my co-counsel mentioned. Rather, they say, well, it's voluntary because we didn't force the PG&E into the RTO. Well, that's really not much of an answer because the point is that it's still involuntary because the CPUC requires their continued participation. They also said, well, the transmission control agreement under which PG&E turned control of its assets over to the California ISO requires our consent, FERC's consent, to withdraw. Well, it also requires the CPUC's consent. It requires the consent of appropriate regulatory authorities. Again, if we give the Commission another crack at this, it's kind of a futile gesture. I would say that given this general principle, that given the general principle that you can't award an incentive for something you're required to do, the add-on becomes unjust and unreasonable. It's the point that Judge Rogers made in her concurrence in the PG&E case in the D.C. circuit, that any you can have add-ons as incentives. That's perfectly justified. But when they're not incentives, they become windfalls, and any add-on to a rate that's supposed to be cost-based renders it unjust and unreasonable. So I think that I would agree that the purpose of the remand would simply be to order the Commission to take the actions appropriate after reversal. That is, to order refunds to the customers who've overpaid as a result of the Commission's actions. Thank you, counsel. We'll hear from FERC. Good morning, Your Honors. Anand Viswanathan on behalf of FERC. I'd just like to point out that we'd like to share three minutes of our time. So it looks like most of the Court's questions focused on the merits, so I'll start there. There were some questions about voluntariness. I just want to clarify that, as we pointed out in our brief, California has not taken the position that PG&E is bound to stay in the system operator. What they've said is that PG&E can seek to leave, and if they do so, California has, before PG&E can leave, California has to consent to that. So they haven't tried to take the position that the membership is, the membership is, they're bound to the system operator. So they have an ability to leave, and we pointed that out in our brief. They say that they are not allowed to grant consent to leave unless the legislature changes the law. So, I mean, I'll just point out that FERC didn't go into the State law points here. I think counsel for PG&E can speak more to the State law issues. I think the Commission's focus here was trying to interpret its policy, the current governing policy, on this specific rate incentive. Right. And so the FERC's policy, and PG&E has a different argument, but FERC's policy is that even assuming hypothetically that an energy company cannot leave, you still want, you still give across the board incentives in this context, right? Well, so I think what the Commission was trying to do is that in that current policy, Order 679, it covered this issue because there is the same claim raised there where protesters, including some of the folks here, argued that if you're bound by State law to a system operator, you shouldn't get the incentive. And the Commission found that it granted a fairly expansive eligibility for the incentive. And so what it said in the Orders on Review was that notwithstanding that argument, it still had the power under 679 to grant the incentive to members that were ongoing members of system operators. And that's been FERC's policy. You'd have to concede that. Exactly. And I think the point of that policy was to, it was intentionally to make it a fairly low evidentiary threshold to receive the incentive, and that was based on this policy goal that FERC had that it expressed in 679 and here, that membership in these regional transmission organizations would result in numerous consumer benefits, and the best way to spread those benefits as widely as possible. So how does that comport with the idea that you must examine these on a case-by-case basis? So I think what the Commission said in Order 679 was it explained what it meant by case-by-case review, and I think it satisfied that burden here. And that means... By saying we can adopt a blanket rule that applies in each case. I think what they said was that case-by-case review means that the utility has to come forward and ask for it. It will not be an automatic grant. And so if the utility comes forward... And it would not be a case unless they asked for it, right? Well, I mean, I think that what the... I mean, there's no case unless they petitioned for it, right? That's right. I mean, I think this is part of a larger filing that PG&E makes every year. So some people I think probably would have favored an automatic grant where maybe they wouldn't have to ask for it. But what FERC required was that they have to come forward and ask for it. It set up certain criteria that were admittedly a fairly low evidentiary threshold to receive a presumption of eligibility. And I think FERC was trying to avoid sort of listing every scenario in which that presumption could be rebutted. Right. Essentially, the evidentiary threshold is so low, they just have to show membership, don't they? If they show ongoing membership, you're correct that they are presumed eligible for the incentive. So what would it take to rebut that presumption in your view? So the commission, as I said, it didn't try to list every possible scenario. It gave a couple of examples in Order 679 and here. One example is if the utility stops being a member of the system operator, it would not be able to get the incentive. Another qualification on the incentive was that it's subject to the base return on equity being found just and reasonable. But that's kind of circular, isn't it? I mean, when you grant the adder, it necessarily makes it just and reasonable. It assumes the answer in the question. I'm not sure that it does, Judge Stroud. I mean, I think that this is a case where the commission found that the showing for the rate itself was not just and reasonable, and they went to a hearing process and that was eventually settled. But what courts have found in the past is that as long as the overall rate is within the zone of reasonableness, then that satisfies the requirements of the Federal Power Act. So the fact that the incentive here was granted doesn't necessarily mean that the company is going to get a windfall. The rate that they asked for that rate payers are paying still has to meet that sort of statutory balance. Sure. But why isn't, assuming for the sake of argument, that the utility is not free to leave, what's the point of the incentive? What are they being? I mean, that's the heart of California's argument is that you're giving them incentive for something they're required to do under state law. And it's giving them a substantial amount of money for it. Well, I think that the point that the commission was trying to make in its policy in Order 679 was that remaining in a system operator, that is something that the commission wants to incentivize. It's a value. There's no question about that. But the idea is you want to provide incentives for people who can leave to stay. And if they can't leave, what's the point of the incentive? Well, to be clear, I don't think that they've tried to argue that they can never leave. What they've said in their briefs and before the commission is that PG&E could try to start the process for leaving. And so if PG&E does have some ability to speak up and say, you know what, we actually do want to try to leave, obviously, you know, that may be — that has to be with California's consent if they actually do leave. We haven't really seen a reason why — we haven't really seen why that itself makes the participation involuntary such that there shouldn't be an incentive under commission policy. Because I think what the commission has tried to state in 679 was that it wants to grant the incentive sort of on a widespread basis. Right. Regardless of the circumstance. I mean, basically, we're coming down to they just have to show membership. And you say it's a rebuttable presumption, but it can only be rebutted if they leave. Well, no, that's not what I'm saying. Or if the rate is unjust and unreasonable under other criteria. And it has nothing to do whether it's — I mean, I'm sorry, I don't want to put words in your mouth, but it has really nothing to do with voluntariness or involuntariness, according to FERC. Is that right? Well, I think that — again, I think the commission was trying to avoid providing every possible scenario where it could be rebutted. I mean, there could be a future case in which there is some issue with voluntariness under state law that maybe the commission would take a different view. So why wouldn't remand be appropriate to allow FERC to undertake that inquiry? Saying, look, you cannot grant incentives when it's truly involuntary participation. And then FERC would say, well, is it really voluntary or involuntary? Why wouldn't that be appropriate? Well, I think there's a couple of responses on that. First of all, in a recent 28-J letter that we filed with the court, we submitted a recent FERC order related to PG&E's request for the incentive, where the commission actually came forward and stated that it did not believe that PG&E's participation was, in fact, involuntary under state law. The second point is I think that we have to recognize that Order 679 itself is not under review, and this same question was presented there. And the commission — I'm happy to point you to the paragraphs. It gave fairly expensive language for who is eligible, who is presumed eligible for the incentive. So the requested restriction was — it was actually two different sort of related restrictions. One was the point that we've heard, that if you're required under state law, you shouldn't be eligible for the incentive. And the other one was if you are — it shouldn't be available for past behavior or for people who have already been ongoing members. And the commission stated that as long as you're an ongoing member, all utilities are presumed eligible for the incentive. So that was the policy position the commission took. I pointed out that that was — obviously, that's a fairly low evidentiary threshold to get that presumption. But I think that — But you also confined the circumstances under which the presumption can be rebutted. I don't think we did, because I think the commission explicitly in Order 679 stated that it did not want to go through the exercise of listing every possible scenario in which it could be rebutted. I can give you a couple of examples. Right. When they leave or when the right structure is unfair and unjust. That's right. And I think that — And those are the only two. Those are the only two that the commission, I think, clarified in 679 in the Orders on Review. That's not to say that there wouldn't be a future scenario where the presumption could be rebutted. But I think that was an intentional choice, as I stated earlier, because the policy was to make this incentive available as much as possible to encourage widespread membership and spread the consumer benefits from these organizations as widely as possible. And I think the commission also pointed out that I don't think has been really challenged before. The commission was this idea of undue discrimination. That is, that if you're a new member, you shouldn't get an incentive — if you're an ongoing member, you shouldn't be denied an incentive that a new member can receive, because that would encourage sort of perverse incentives for utilities to leave. If they could. If they could. But I think that the commission has stated in the recent order that we filed that membership in these organizations is generally voluntary. And again, as I pointed out earlier when we stated in our briefs, I'm not sure that California has actually shown that PG&E can't leave. And I think that's — Who gets to determine that question, what California law provides? The California people say the California law says that you can't leave. That's the statute. You say we don't believe that. Should we resolve that question? Well, I think that the commission was trying to avoid making that determination on state law, because under its policy, regardless of whether membership is required by statute, it still had the ability to grant the incentive as a matter of federal policy. I know, but you're taking that position. So if that is an issue, who determines that? You say California law doesn't provide that. They say it does. Who decides? Should the court decide that? I mean, I think that that's been decided by commission policy. I think the issue here is it's whether the commission reasonably interprets it. The commission can't decide on what California law means. Certainly not. I mean, the California Supreme Court could do that, or legislature, the commission, the California commission. Certainly, and I think the commission was trying to take care to avoid stepping into that state law question, but I think it was trying to make clear. All right. So you leave that question aside. Then you say it doesn't matter. That's what you said originally. It doesn't matter whether you're required to stay in by California law. I think that's the point that the commission tried to make in the orders on review, that notwithstanding that state law argument, it still had authority under its own policy to grant the incentive. And so if the question is you're granting an incentive to people who are not taking any voluntary act but are compelled to take that act. I mean, again, I don't. What's the incentive? I mean, if they have no choice, how are you paying them for doing something that they're forced to do? The incentive is for encouraging ongoing membership. But ongoing, it doesn't encourage it. They have no choice. Well, I think that as we pointed out in our brief, PG&E still does have a choice to try to leave. Now it's up to California to decide whether or not it's going to consent. And I think some of the questions earlier went to the issue of whether California can change its mind in the future. And obviously, I think we discussed that that's a matter of state law. Well, anything can happen. I mean, FERC can be abolished. It wouldn't surprise me if FERC were abolished in the future. But we can't decide cases on that basis, and we can't decide cases on the basis that California may change its law. I think that I'm not sure that California has tried to say that it will never grant  No, the legislature has not said we will never change our minds in the future. But we have to deal with the law as it is. Certainly, that's true, Judge Weinhart. And I think that in a future case, if there was a showing that – I don't want to speculate on what sort of showing would rebut the presumption that the commission set forth in Order 679, but yeah, I'm not – And what is the effect of that order on our deliberations today? Well, I think the question before the Court is whether the commission's interpretation of its prior policy was reasonable. And I think that we've argued – The one that you issued a month ago? Oh, I'm sorry. So the effect of the later order, I'll concede, it doesn't make the orders on review reasonable. I think we tried to submit that to the Court just to provide further context for the commission's findings here and that the commission was acting consistently. But don't we decide the case as if there were no such order a month ago, or do we take that order into account? I think you can take it into account, but I mean, that later order wouldn't necessarily correct a deficiency in the orders on review. Right. So the order – but I think the orders on review stand on their own. I think that the point there is that if the question is whether the commission's interpretation of its existing policy was reasonable, then I think that – I think you can make that finding on that basis with the orders on review. There were some questions about which – We've taken over your time a bit. We need to give some time for PG&E. Is there anything really important that you need to – I mean, it's in your briefs, and I want to give you a chance to argue. We have nothing further. The Court has no further questions. Thank you, Your Honor. We want to make sure we hear from PG&E. We've been talking about you all day, so now we want to hear about you, hear from you. Put three minutes on, yeah. May it please the Court. Good morning, Your Honors. Mark Patrizio, Pacific Gas and Electric Company. This morning, counsel for the CPUC raised an argument that I have not heard before and certainly isn't in any of the briefs, that somehow Public Utilities Code Section 330M would need to be repealed or revised in order for PG&E or any of the current ISO members to leave the ISO. I've scoured Public Utilities Code 330. I don't see anything in there suggesting that utilities are required to remain in the ISO indefinitely and until the statute is repealed. In fact, Public Utilities Code 330 simply expresses legislative intent that a restructuring of the California electric markets would be good for consumers, and a number of things in that restructuring would be good, and it encourages those things to happen, including that all publicly-owned utilities, in addition to investor-owned utilities, would join the ISO. Well, if 330 were a mandate and a state law, the publicly-owned utilities would be members of the ISO, and none of them are. So 330 really is not any kind of mandate, and this Court can certainly look at the plain language of that statute and confirm that. Another Public Utilities Code section that the petitioner cites is 365. That section only directs the CPUC to take certain actions, to encourage participation. Is that the word it uses, encourage? I think it says facilitate. I wrote it down. It orders the CPUC to facilitate the implementation of 330 and to encourage, it uses the word encourage, all publicly-owned utilities to join. Again, there's nothing in 365 that constitutes a mandate that PG&E or the other investor-owned utilities must be in and must remain in indefinitely absent legislative amendment. So your point is the state law allows you to leave. The state law absolutely does not require me to stay in. The only thing out there and the only thing in this record that might be interpreted as a requirement of state law is the CPUC's own order in 1998, which did not mention 330 as a requirement that must be revised in order for anyone to leave. That 1998 CPUC decision simply said, before you leave, we, the CPUC, require that you come back here. Now, are you quoting or are you paraphrasing, before you leave? See, the problem we always have with lawyers is you start paraphrasing, and when you get to the actual language, guess what? Okay. You just said, before you leave. Does that say before you leave? No, it does not, Your Honor. Surprise. What does it say? It essentially says, I don't have the quote. Oh, there essentially is trouble, too. Those are weasel words. All right, let me go a different way, Your Honor. What does it say? It says 851, you must file an 851 application with us if you want to take back operational control of your facilities from the ISO. You must come back here to the CPUC and file under public utilities code 851 for our authorization to take back your facilities. So implying, if we can use a word from another case, that it's a possibility that they would grant it, but it encourages you to do that. It doesn't say, under no circumstances, come back to us on this, because you're not going to leave state law, whatever. It says, if you want to do this, here's what you do. Exactly so, Your Honor. Well, the other side can respond to that. And so now let's talk about 851. In the 1995 CPUC decision that counsel referred to, the CPUC directed PG&E, Southern California Edison, and San Diego Gas and Electric Company to work together and submit a proposal to FERC to establish the ISO, the protocols that would be used, and the mechanism for transferring operational control over their facilities to the ISO. We did that. The three utilities, investor-owned utilities, worked together and did that. FERC approved it. We transferred operational control. The 1998 order, let me take a step back. In that 1995 order, the CPUC said, you need to come to us after FERC sets all of this stuff up and file under Section 851 to get our authorization to actually transfer operational control of your facilities to the ISO. Well, PG&E never thought that was right anyway, because 851 talks about needing the CPUC's authority to sell, lease, assign, mortgage, or otherwise dispose of or encumber utility property that is needed for public use. Transferring operational control to the ISO does none of those things, but the CPUC relied on the or otherwise dispose of language as saying, that is our hook for having you come to us for a filing. You are otherwise disposing of your facilities by letting this third party do the scheduling over your facilities. PG&E still owns, maintains, repairs, manually operates where manual operation is required its facilities. It hasn't disposed of anything. But let's put that aside. What's happening here is the CPUC also said in their 1998 order, when you want to take that operational control back, you have to come back to us with another 851. And where does it say that? It's in the 1998 decision, Your Honor. Right, so they take the position you've got to come back if you want to leave the ISO. They take the position that a Section 851 filing is required. Well, there's no stretch of the imagination that taking back operational control can constitute leasing, assigning, mortgaging, or even otherwise disposing of. We're gaining something. We're not offloading anything. It's an irrational interpretation of the section. But what's at issue here is not whether or not you actually can leave or not. What's at issue, I think, is here is whether FERC can take the position that it doesn't matter whether it's involuntary or not. So why isn't the appropriate remedy to say you can't take that position, FERC, and remand it and say, look, the State can present its evidence, PG&E can present its evidence, as to whether this is voluntary or not, or whether there's some incentives for you not to take any action to leave, and then decide whether it applies. Because what we're looking at here is a blanket decision that mere membership is enough. Take me where I'm wrong. Your Honor, the FERC policy, as counsel for FERC has indicated, is very welcoming of ongoing membership. They want to encourage that. PG&E is an ongoing member voluntarily. And I'll also point out to you, Your Honor, the other two investor-owned utilities in California, Southern California Edison Company and San Diego Gas and Electric Company, are also members of the ISO voluntarily. And they both have formula rates which explicitly provide that the 50 basis point adder is part of their return on equity. And the CPUC was a participant in the proceedings which gave rise to those formula rates. So the CPUC is being completely inconsistent in arguing that FERC should not allow an incentive for ongoing participation. It's a windfall to the utility as it applies to PG&E. But it's okay that it explicitly provides that same incentive to the other two investor-owned utilities in California. It is a completely inconsistent application of what they say they believe policy should be. Where is this particular argument made in your briefs, the inconsistency with respect to the other utilities? It is not in the briefs, Your Honor. I thought. What do we do with that? This whole new argument that the CPUC is raising on we are required by law to stay in and it is a windfall because we are required by law to stay in, it wasn't in their first round of briefing. They argued only that their permission was required. We weren't free to leave. So. Different shades of an argument, yeah. We're way over your time now. Do we have further questions? I think we have your argument in hand. All right. Thank you, Your Honor. One minute on for rebuttal. Yes, Your Honors. Thank you. Just to clarify one point made by PG&E counsel, I want to be clear that the CPUC has consistently argued in brief that the CPUC orders were affirmed by state law and we have cited two sections, 330 and 365 of the public utilities code. And you can review those, but those are the CPUC's interpretation of those code provisions is that we would not be able to grant PG&E the permission to leave the CAISO. When Your Honor asked about how this should be handled back at FERC, I think that given FERC's post hoc arguments, both in its 28J letter and the ones that were made here today, it's becoming clearer and clearer to me that this case is not just about the fact that FERC has refused to address the CPUC's arguments about whether PG&E's membership is involuntary or not and whether that means that it should not get the incentive. I think that the case is now boiling down to an issue of what voluntary means or not. And I am very concerned that given the record on this issue that we've seen thus far, that a remand to FERC to address whether or not PG&E's membership is voluntary or not could essentially wind us up back here three years from now with rate payers having paid all of those incentives in the meantime. So I just put this before the Court as you think about how you want to address resolving this case. Unfortunately, and neither am I, which is why I'm making this point. The other side tells us that you're treating the investor-owned utilities differently, that the rate that you're objecting to here or the adder that you're objecting to here is essentially baked into their rates, and so you're trying to stop them from doing something that you've allowed the others to do. Your answer to that is what? Yes. The other utilities have had formula rates that we have not been able to challenge for the last five to six years. They include what's at issue here? They currently include that because they were settled just like previous PG&E rate cases were settled when we felt that it wasn't necessary to challenge the incentive at that time. So you agreed to the adder incentive in those cases, even though they were involuntarily? Just as we settled, we did not agree to the adder. We settled at a specific revenue requirement for PG&E and for the other utilities previously because we didn't feel the need to litigate this issue. Does that strike you as strange that you've agreed in those two instances of the investor-owned utilities exactly what you're fighting against here? Your Honor, to the extent that this case finds that this adder is not appropriate, first of all, we will be raising the issue when Edison and SDG&E come forward to us with their rate proposals, which will be in the next year. We will be raising the same challenges there, and I would be very surprised if the Commission did not support moving forward against both of those utilities to seek to have the adder eliminated. And the play goes on. Yes. Thank you, Counsel. Thank you. If we need further briefing on any of the issues that were raised in the context of this, we'll ask for it. Thank you all for your arguments. They've been very helpful today. We will be in recess. We have some guests, and Judges Trott and Reinhart will come out and speak to the students after we confer. So thank you all for being here.  The case just heard will be submitted, and we're in recess. All rise.
judges: Reinhardt, Trott, Thomas